IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| ALICIA C. CASTRO, ) | |
| ) | |
|       Plaintiff, ) | Case No. CV06-979-HU |
| ) | |
|   vs. ) | OPINION AND ORDER |
| ) | |
| DS WATERS OF AMERICA, LP, ) | |
| ) | |
|       Defendant. ) | |
| _____) | |
| | |
| DS WATERS OF AMERICA, LP, ) | |
| ) | |
|       Third Party Plaintiff, ) | |
| ) | |
|   vs. ) | |
| ) | |
| THERMO CONCEPTS, INC., a foreign ) | |
| corporation. ) | |
| ) | |
|       Third Party Defendant. ) | |
| _____) | |

///


1   - OPINION AND ORDER

```
Craig O. West
8555 S.W. Tualatin Road
P.O. Box 909
Tualatin, Oregon 97062
     Attorney for Plaintiff

Steve Lawrence
Law Offices of Andersen and Nyberg
650 NE Holladay Street
P.O. Box 4400
Portland, Oregon 97208
     Attorneys for Defendant/Third Party plaintiff

Glenn E. Barger
Daniel E. Thenell
Smith, Freed & Eberhard
1001 S.W. Fifth Avenue, 17th Floor
Portland, Oregon 97204
     Attorneys for Third Party Defendant
```

HUBEL, Magistrate Judge:

Plaintiff Alicia Castro brought this product liability action against defendant DS Waters of America, alleging that a water dispenser she purchased from DS Waters on June 22, 2004, caused a fire at a residence on May 5, 2005, resulting in damages of approximately $153,000. Plaintiff alleges that DS Waters is an Oregon corporation. But DS Waters' Amended Answer alleges that it is a Limited Partnership registered in the state of Delaware.

DS Waters brought a third party action for contribution against Thermo Concepts, Inc. (Thermo), the manufacturer of the water dispenser. DS Waters alleges that Thermo is a Canadian corporation doing business in Oregon and throughout the United States that had made its water dispenser available for sale in

2

Oregon through DS Waters. Corrected Third Party Complaint ¶¶ 1, 2.

Thermo moves to dismiss the third-party complaint for lack of personal jurisdiction.

## Standard

When a defendant's motion to dismiss is made as its initial response and the court is asked to decide the motion without conducting an evidentiary hearing, plaintiff need only make a prima facie showing that personal jurisdiction exists. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 268 (9th Cir. 1995).

To make that showing, plaintiff is required to produce admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. Mattel, Inc. v. Greiner and Hauser GMBH, 354 F.3d 857, 862 (9th Cir. 2003). Unless directly contravened, plaintiff's version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides are resolved in plaintiff's favor. Id.; Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). The court need not decide whether plaintiff has proven its contentions, but only whether it has made a prima facie case for personal jurisdiction. Mattel, 354 F.3d at 862.
///

**Discussion**

The parties agree that the pertinent issue to be decided on this motion is whether there is specific jurisdiction over Thermo in Oregon. Specific jurisdiction requires three things: 1) the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or a resident of the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and 3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006).

If plaintiff satisfies the first two prongs of this test, defendant must present a "compelling case" that exercising personal jurisdiction would not be reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

"Purposeful availment" and "purposeful direction" are two distinct concepts: a purposeful availment analysis is most often used in contract actions, while a purposeful direction analysis is most often used for actions in tort. Id. Because the underlying claim in this case is product liability, which sounds in tort, the purposeful direction test is appropriate.

4

A showing that a defendant purposefully directed its conduct toward a forum state usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere. Id., citing, *inter alia,* Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774-75 (1984)(finding purposeful direction where defendant published magazines in Ohio and circulated them in the forum state); Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 899 (9th Cir. 2002)(finding purposeful direction where defendant distributed music albums from Europe in the forum state); and Plant Food Co-Op v. Wolfkill Feed & Fertilizer Corp., 633 F.2d 155, 158-60 (9th Cir. 1980)(holding that Canadian fertilizer distributor that shipped defective or mislabeled fertilizer to Montana may properly be subject to personal jurisdiction there).

   1. Purposeful direction

Thermo argues that the purposeful direction analysis is not satisfied in this case. Thermo has submitted evidence that it is a Canadian corporation with its headquarters in Sherbrooke, Quebec, Canada. Second Declaration of Serge Poulin ¶ 2, attached to Declaration of Daniel Thenell. According to the Second Poulin Declaration, Thermo has no employees within the United States, no Thermo employee has ever visited Oregon, and Thermo has never advertised in Oregon. Id. at ¶ 4, 5, 6. Thermo has submitted

5

evidence that it does not sell its products directly to consumers in Oregon, but only through distributors of bottled water products. See Declaration of Serge Poulin ¶ 7, 8. Poulin states that only twice, in May 2004 and September 2004, have shipments of water dispensers been directed to Oregon by request of DS Waters. Id. at ¶ 6; see also Declaration of Serge Poulin ¶ 8.

Thermo argues that there is no evidence that it knew any of its shipments of water dispensers to DS Waters and directed to Oregon on two occasions would cause harm, and that the only reason Thermo ever shipped any product directly to Oregon was at DS Waters' request.

The first of these arguments--that there is no evidence Thermo knew any of its shipments directed to Oregon would cause harm--is not pertinent to the personal jurisdiction inquiry in this case because it does not involve an intentional tort. In intentional tort cases, "purposeful direction" is satisfied where 1) defendant committed a wrongful intentional act, 2) expressly aimed at the forum state, and 3) causing harm that defendant knew or should have known was likely to be suffered in the forum state. See, e.g., Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002); Calder v. Jones, 465 U.S. 783 (1984).

But in other cases other than those involving intentional torts, the foreseeability that is critical to specific jurisdiction is not the foreseeability of causing injury in the

6

forum state, but rather whether the defendant's conduct and connection with the forum state are such that it should "reasonably anticipate being haled into court there;" it is sufficient for a corporation to deliver its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980); Keeton, 465 U.S. at 774-75; MCA Records, 296 F.3d at 899; Plant Food Co-Op, 633 F.2d at 158-60.

In response to the second argument, DS Waters asserts that the purposeful direction prong is satisfied under Plant Foot Co-Op. In that case, a Canadian corporation, Pillsbury, shipped fertilizer to Plant Food Co-Op, a fertilizer dealer in Montana, at the request of, and through, Wolfkill, a Washington corporation. 633 F.2d at 159-60. The fertilizer was manufactured by another Canadian corporation. The court held that the imposition of specific jurisdiction over Pillsbury was proper:

> If the sale of a product of a distributor is not an isolated occurrence, but arises from the efforts of the distributor to serve, directly or indirectly, the market for its products in other states, it is not unreasonable to subject it to suit in one of those states if its allegedly defective merchandise has there been the source of injury to its owner or others. ... Pillsbury engaged in affirmative conduct to deliver its product into Montana. It was not brought into the forum by the unilateral act of another party. This contact with Montana was voluntary and financially beneficial to Pillsbury. When it knew the fertilizer was bound for Montana

7

> Pillsbury could have objected or made other arrangements if it found exposure to Montana's long-arm jurisdiction unacceptable.

633 F.2d at 159.

Thermo attempts to distinguish Plant Food Co-Op on the ground that Thermo would not have had contact with Oregon had DS Waters not ordered the water dispensers and directed them to Oregon. But Plant Food Co-Op disposes of this argument with its virtually identical facts: Pillsbury would have had no contacts with Montana if the Wolfkill had not directed Pillsbury to send the fertilizer to Montana; nevertheless, personal jurisdiction over Pillsbury existed. Plant Food Co-Op makes it irrelevant whether the product was sent to the forum on the manufacturer's own initiative or because of a request to the manufacturer by a third party, so long as the manufacturer knew the ultimate destination of the product, as Pillsbury did in Plant Food Co-Op and as Thermo did in this case.

2. "Arises under"

Thermo argues that the "arises out of" prong is not met in this case because there is no evidence that plaintiff's defective water dispenser was in one of the two shipments Thermo sent to DS Waters in Oregon.

DS Waters has proffered evidence that it has procured Thermo products only from Thermo directly, and not from any other companies. Affidavit of Kelley Goshay, Exhibit J, Lawrence

Affidavit. But this evidence does not necessarily establish that plaintiff's water dispenser was part of Thermo's shipment to DS Waters in Oregon.

The parties agreed at oral argument that there is no evidence in existence which would demonstrate that the water dispenser did or did not come from one of Thermo's two shipments to Oregon. The water dispenser was destroyed in the fire, and there is no record of its serial number.

DS Waters argues that the "arises under" prong is met nevertheless, under the "but for" test articulated by the Ninth Circuit. This test is satisfied by an affirmative answer to the question: but for the defendant's contacts with the forum state, would plaintiff's claims against defendant have arisen? See, e.g., Mattel, 354 F.3d at 864 and Ballard, 65 F.3d at 1500. DS Waters argues that "but for" Thermo's shipping its water dispensers to DS Waters, DS Waters would not have sold Thermo's products, its customer would not have bought the Thermo product from DS Waters, and the water dispenser would not have caused harm in Oregon.

I agree; under the "but for" test, and the necessity that DS Waters's uncontroverted allegation that Thermo made the water dispenser available for sale in Oregon through DS Waters be taken as true, the "arises under" prong is satisfied in this case.
///

9

###    3.    Reasonableness

Thermo argues that even if the first two prongs of specific jurisdiction are met, the exercise of personal jurisdiction over it would be unreasonable and therefore in violation of the due process clause. See Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998). For jurisdiction to be reasonable, it must comport with "fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). When a defendant has purposefully directed activities at forum residents, he must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487 (9th Cir. 1993).

The question of reasonableness requires consideration of seven factors: 1) the extent of a defendant's purposeful interjection; 2) the burden on the defendant in defending in the forum; 3) the extent of conflict with the sovereignty of the defendant's state; 4) the forum state's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the controversy; 6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum. Burger King, 471 U.S. at 476-77. No one factor is dispositive; the court must balance all seven. Core-Vent, 11 F.3d at 1488; Panavision, 141 F.3d at 1323.

Even when there is sufficient "interjection" to meet the purposeful availment prong, the degree of interjection must be weighed in assessing reasonableness. <u>Core-Vent</u>, 11 F.3d at 1488; <u>Panavision</u>, 141 F.3d at 1323. This factor weighs slightly in plaintiff's favor, as there has been some, albeit slight, interjection into the forum.

Unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction. <u>Panavision</u>, 141 F.3d at 1323. In <u>Panavision</u>, the court noted that requiring an Illinois resident to litigate in California was not so great a burden as to deprive the Illinois resident of due process: "[I]n this era of fax machines and discount air travel, requiring [defendant] to litigate in California is not constitutionally unreasonable." 141 F.3d at 1323. This factor is neutral. Someone will be inconvenienced in any jurisdiction.

The sovereignty factor concerns the extent to which the exercise of jurisdiction in the forum state would conflict with the sovereignty of the defendant's domicile state. See <u>Panavision</u>, 141 F.3d at 1323; <u>Core-Vent</u>, 11 F.3d at 1489. This factor is neutral in this case.

The "efficient resolution" factor "focuses on the location of the evidence and witnesses." <u>Panavision</u>, 141 F.3d at 1323. "It is no longer weighed heavily given the modern advances in

11

communication and transportation." Id. When evidence is limited and potential witnesses are few, this factor may be regarded as neutral. Id. Little weight is given to the plaintiff's inconvenience. Ziegler, 64 F.3d at 476; Panavision, 141 F.3d at 1324.

Thermo's arguments focus on the first and last of the seven factors. It argues that its contacts with Oregon are not sufficient to make the exercise of jurisdiction reasonable and that an alternate, and far more convenient, forum exists to settle the contribution dispute between DS Waters and Thermo. Under the Quebec Civil Code, DS Waters could sue Thermo for damages DS Waters sustains as a result of the "joint venture" between Thermo and DS Waters. See First Declaration of Pierre-Yves Morin, ¶¶ 4-6. Thermo argues that its dismissal from this action will have no effect on whether plaintiff is compensated for the property damage she has incurred, or in vindicating any interests the state of Oregon may have in this action.

Although Thermo has articulated some considerations that weigh against the exercise of personal jurisdiction, particularly the argument that its purposeful direction of activities toward Oregon has not been extensive, Thermo has not presented a compelling case that the exercise of jurisdiction would be unreasonable.

In its reply memorandum, Thermo asked the court to convert

12

its motion to dismiss into a motion for summary judgment. The request is denied. Thermo's motion to dismiss does not challenge the jurisdictional facts alleged in the Third Party Complaint, but rather tests DS Waters's theory of jurisdiction; under such circumstances, the court need only determine whether the facts alleged, if true, are sufficient to make out a prima facie showing of personal jurisdiction. See Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* 9:114 (2006).

  4. Thermo's Motion to Strike

Thermo argues that exhibits A, B, C, D, F, G, H, K, L, and M of the Lawrence Affidavit should be disregarded, because they are unauthenticated and several of the documents also contain inadmissible hearsay. The exhibits are not properly authenticated and contain hearsay. None of the challenged exhibits was considered in determining whether to grant the motion to dismiss. The motion to strike made in Thermo's reply brief (no doc. #) is denied as moot.

### Conclusion

Thermo's motion to dismiss (doc. # 10) is DENIED. Thermo's motion to strike is DENIED as moot.

IT IS SO ORDERED.

Dated this 11th day of May, 2007.

          /s/ Dennis James Hubel
           Dennis James Hubel
         United States Magistrate Judge